**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| J&J EMPIRE EXPRESS, INC. d/b/a JEE, | : | |
|  | : | |
| Petitioner, | : | |
|  | : | Civil Action No.: 1:24-cv-01200- |
| v. | : | MKV |
|  | : | |
| FEDEX GROUND PACKAGE SYSTEM, | : | |
| INC. i/p/a FED EX GROUND PACKAGE | : | |
| SYSTEM, INC. | : | |
|  | : | |
| Respondent. | : | |
|  | : | |

---

**PETITIONER J&J EMPIRE EXPRESS, INC. d/b/a JEE'S**
**MEMORANDUM IN FURTHER SUPPORT OF ITS**
**MOTION TO VACATE THE AAA ARBITRATION AWARD**

---

The Roth Law Firm, PLLC
295 Madison Avenue
Floor 22
New York, New York 10017
*Attorneys for Petitioner J&J Express, Inc.*
*d/b/a JEE*

Petitioner J&J Empire Express. Inc. d/b/a JEE's ("Petitioner" or "J&J") submits its reply memorandum of law in further support of its Petition to vacate the arbitration award that the sole arbitrator manifestly disregarded the law in rendering the American Arbitration Association ("AAA") award in favor of Respondent FedEx Ground Package System, Inc. ("Respondent" or "FedEx").

## PRELIMINARY STATEMENT

By its opposition papers, FedEx argues that the basis upon which to vacate an arbitration award in New York State is limited exclusively to the grounds set forth in the Federal Arbitration Act ("FAA"). That conclusion ignores the well-established ground, under New York State law, that provides for the vacatur of an arbitration award where the arbitrator "manifestly disregarded the law" – precisely what happened here. Specifically, on October 30, 2023, a sole arbitrator rendered the Award that literally ignored the overwhelming law that FedEx was not in breach of the operative agreement between the parties. In applying the law, which the arbitrator wholly ignored, she also arbitrator ignored the following *undisputed facts*:

- the testimony of Poindexter, the most senior individual at FedEx, who specifically admitted that "if on June 10th Mr. Ruggiero walked in with a real potential new owner [he would] *in good faith* give him another month to see how [it] pans out." Tr. 922:3-18. (emphasis added). *That is precisely what Ruggiero tried to do.* On June 10th – only because he was being ghosted by Sherer and Poindexter for the prior weeks – he tried to present Chris Messina, a very viable candidate to purchase J&J's route. *Sherer and Poindexter would not even see him that day.* Instead, they told him to commence an arbitration and threatened to call security.

- notwithstanding FedEx's clear and unambiguous obligation to provide J&J notice of any default, it refused to do so and summarily terminated J&J;

- several individuals testified that FedEx, at all times, engaged in a concentrated plan to get rid of J&J's principal, Joseph Ruggiero ("Ruggiero"), the "spoiled rich kid" (Tr.:243:9-10 (Ruggiero)) or "little, rich kid that his father buy him a business." Tr. 277:19-21 (McKenzie) and attempted to drive J&J out of business by providing uniquely disparate working conditions to J&J's employees, encouraging J&J's employees to leave J&J and obtain employment with other FedEx contractors, fabricating failed drug tests for J&J's managers and then rehiring them for other FedEx service providers, and pinning mis-deliveries made by other FedEx

contractors on J&J. Because J&J's employees were very dedicated to Ruggiero, that plan failed.

- FedEx also manufactured a for cause termination of J&J's most important employee, stating that he failed a drug test without ever showing it to him and, thereafter, trying to hire him back.

- FedEx devised a pretext for FedEx to terminate Ruggiero and his business, J&J, as a service provider.  FedEx terminated J&J because one of J&J's employees, indisputably ***without Ruggiero's knowledge***, drove a Penske truck over the George Washington Bridge ("GWB") to deliver paychecks as many of the employees lived paycheck to paycheck.  In connection with that paycheck delivery, there was no accident.  There was no ticket issued.  It is undisputed that Ruggiero never knew it happened.  And instead of providing J&J an opportunity to cure a default ("OTC"), as FedEx had done in the past, it informed Ruggiero that it would conduct a "review" of the incident.  But there was none.  No one interviewed Ruggiero.  No one interviewed the actual driver of the Penske truck.  And no one acknowledged that J&J cured the one time incident by firing the individual who took the truck to deliver paychecks. As a result of that incident, FedEx opted to discontinue the Service Provider Agreement ("ISPA").  J5.

- after terminating J&J, while FedEx extended the date in which it allowed Ruggiero to assign the routes until June 10, 2022, it refused to allow him to do so.  As further set forth below, because FedEx's managers, Sherer and Poindexter, wanted to harm Ruggiero, they rejected in bad faith every person he brought to purchase the business, each of whom was qualified.  Thereafter, they let it leak that J&J was terminated to allow J&J's assignee, Shawn Ponds, to change his position on his "deal" to purchase J&J's route and sweep in to take the business for free.

As a matter of law, FedEx breached not only certain provisions of its own ISPA, but admittedly breached the obligation of good faith and fair dealing, a covenant that forms part of every agreement, when it terminated J&J's contract and refused to permit J&J to assign the route to Messina and other buyers that were presented to FedEx.  FedEx, perhaps intentionally, ignores the argument that an arbitration award should must be vacated as irrational and in manifest disregard of the law.

Indeed, FedEx has a history of engaging in bad faith.  As set forth below, *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, 144 N.M. 449, 451, 188 P.3d 1200 is on all fours where FedEx's refused to allow a plaintiff from buying additional routes and expanding his

business. *Id*. Because of FedEx's misconduct, a jury awarded damages, determining that FedEx had violated its duty of good faith and fair dealing. *Id*.  Here, FedEx got away with it.

## ARGUMENT

### POINT I

### RESPONDENT IGNORES THE GROUND, UNDER NEW YORK LAW, TO VACATE AN AWARD FOR MANIFEST DISREGARD OF THE LAW

By and through its opposition papers, FedEx say vacatur is not appropriate because the FAA provides "exclusive grounds" to vacate an award, and that a court may vacate an arbitration award *only* on the bases provided in §10(a) of the FAA.  FedEx is simply wrong as another standard, well regarded under the laws of the State of New York, in which vacatur is required where the arbitrator manifestly disregards the law.  That is, where the arbitrator clearly ignores the existence of established legal principles, an award should be vacated.  Again, J&J is not arguing that the arbitrator committed an "error;" it is arguing that the arbitrator was provided black letter law and chose to ignore it.

Here, for one example, the arbitrator was fully aware of FedEx's undeniable admission, through its top boss, that it violated the covenant of good faith and fair dealing by not providing J&J an extension on June 10th to approve the J&J's sale of the route to Chris Messina. Accordingly, J&J respectfully requests that the arbitrator's award in favor of FedEx be vacated.

### POINT II

### THE ARBITRATOR'S DECISION THAT J&J BREACHED ITS CONTRACT WITH FEDEX WAS IRRATIONAL AND IN MANIFEST DISREGARD OF THE LAW

The Decision irrationally holds that the George Washington Bridge (GWB") single incident (in which a J&J employee drove over the GWB) was a Tier 2 or material breach by J&J of the Agreement that afforded J&J "no right to cure" because this breach related to "'integrity, safety and security' rules" (Decision at 5).

4

Yet, it is indisputable that no one at J&J was aware of the single incident. More importantly, the GWB incident did not involve any violation of federal rules and regulations and FedEx never claimed it did. Decision at 6. Further, the Respondents state in their opposition papers that the vehicle was "laden with FedEx Ground packages" and Joseph Ruggiero authorized James to drive over the GWB thereby violating the ISPA; the arbitrator concluding that Petitioner offered "no evidence or conflicting testimony." Strikingly, the Arbitrator's findings that the FedEx vehicle was "laden" with packages is simply without support and FedEx's decision to terminate a valuable agreement because of aone incndent that was not known by the owners of J&J ignores the good faith and fair dealing obligations cemented into contracts in the State of New York. Even worse, there could not be a breach of the Agreement as the J&J employee was undisputably not providing any services during the GWB Incident.

Finally, Schedule I, Section 8 makes clear that FedEx used the GWB Incident as a pretext for terminating J&J's contract. FedEx did not provide any evidence of any prior or subsequent "safety related violation" by J&J. Plainly, the GWB Incident, in which *no federal regulation was violated*, was a pretext for termination of J&J's Agreement. The Arbitrator failed to identify *any breach of any contractual duty* by J&J.

At the point where FedEx failed to identify a single contract breach or violation of federal regulations, it became FedEx's burden to show it did not terminate in violation of the good faith covenant, which it failed to do.

## POINT III

### THE ARBITRATOR'S DECISION THAT FEDEX REJECTED ALL OF J&J'S BUYERS IN GOOD FAITH WAS IRRATIONAL AND IS ALSO IN MANIFEST DISREGARD OF THE LAW

In the Respondent's opposition papers, the Respondent states that the arbitrator concluded "any loss suffered by the Claimant was due to a lack of urgency and a failure to manage [J&J's] assignment rights." Moreover, the arbitrator concluded that the Respondent

acted reasonably and in good faith and did not act unreasonably in withholding consent for Petitioner to assign the ISPA. The Arbitrator did not cite any testimony for these conclusions as to what FedEx used to refuse to withhold consent to an assignment and a result the arbitrator does not acknowledge FedEx acted in bad faith in refusing to consent to any assignment of the ISPA resulting in a clear manifest disregard of the law.  Yet, the record is replete with evidence of J&J's performance.

### A. The Arbitrator's Decision as to FedEx's Refusal to Consent to the Sale to Krystle Ruggiero was Irrational

The Arbitrator's decision that FedEx's withholding of consent to the sale of the business to Krystal Ruggerio was in good faith is irrational. Krystle has two Masters degrees, with experience working for J&J's FedEx business, including managing payroll, schedules, hiring, uniforms, package disputes, and customers, who originally wanted to purchase the route that her father purchased for Joe. Tr. 315. Notwithstanding Krystle's impeccable credentials and experience, the Arbitrator irrationally concluded*, **without citation to any evidence**,* "[i]t appears [FedEx] felt this was a sham transaction." Decision at 8. No one from FedEx testified to this. The Arbitrator's conclusion that "Respondent did not unreasonably withhold consent as Claimant never presented a viable candidate" is plainly in error. Decision at 10.

### B. The Arbitrator's Decision as to FedEx's Refusal to Consent to the Sale to Shawn Ponds was Irrational

The Arbitrator acknowledged that Shawn Ponds was a "viable assignee" including because he was an "internal assignee." Decision at 8. Ponds proved himself to be an unreliable witness, that was wholly relied on by the Arbitrator in the Decision.

### C. The Arbitrator's Decision as to FedEx's Refusal to Consent to the Sale to Chris Messina was Irrational

Chris Messina reviewed J&J's financials and signed a bill of sale for J&J's business. Tr. 491-492. The Arbitrator decided that FedEx did not refuse the sale to Messian in good faith

because of issues related to Messina's experience, partners, and authority. Decision at 10. However, the Arbitrator disregarded the facts and the law as it is undisputed that FedEx did not deny Messina's acquisition on any of these grounds, or any grounds at all. Tr. 504*. In fact, FedEx manager Poindexter testified that FedEx was obligated to, in good faith, extend J&J's ability to assign the valuable routes if J&J presented a buyer on June 10th as it did with Messina.*

Accordingly, *it is indisputable* that FedEx had the obligation to extend J&J's ability to sell for one more month and meet with Messina, who was a ready, willing and able purchaser of the business, and that FedEx's refusal to meet with Messina was a breach.

### D.  FedEx Has a History of Refusing Consent in Bad Faith

In *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, 144 N.M. 449, 451, 188 P.3d 1200, the evidence showed that the parties had discussions about buying other routes, and that independent contractors had a right to buy additional routes. *Id.* Ultimately, the jury awarded damages, determining that FedEx had violated its duty of good faith and fair dealing. *Id.*

As in *Sanders*, J&J and FedEx understood that if J&J brought a potential buyer to FedEx on June 10th, FedEx had a good faith obligation to extend the term to allow J&J to complete the transaction. Tr. 928:21-922:8. The Arbitrator disregarded the law and irrationally concluded FedEx rejected the potential assignees based on factors that not only were never considered by FedEx. Accordingly, J&J respectfully requests that the arbitrator manifestly disregarded the law in concluding without any evidence that FedEx did not act in bad faith by rejecting any potential assignee brought by J&J to assume the ISPA assignment.

**<u>CONCLUSION</u>**

For all of the reasons set forth herein, Petitioner's motion to vacate the arbitration award should be granted as the Arbitrator manifestly disregarded the law.


Dated: New York, New York
      April 8, 2024

                                        THE ROTH LAW FIRM, PLLC

                                        *Richard Roth*

                                By: _____
                                      Richard A. Roth, Esq.
                                  295 Madison Ave., Fl. 22
                                  New York, NY 10017
                                  212-542-8882